CLEVENGER, Circuit Judge.
 

 Adway Maggitt, Jr., appeals from the decision of the United States Court of Appeals for Veterans Claims (Veterans Court)
 
 [1]
 
 dismissing his appeal in part for
 
 *1373
 
 lack of jurisdiction and for failure to exhaust administrative remedies, and affirming the denial by the Board of Veterans’ Appeals (Board) of his claims for service connection.
 
 Maggitt v. West,
 
 No. 97-357, slip op. at 3, 5, 1998 WL 665411 (Aug. 27, 1998). Because the Veterans Court erred in dismissing Maggitt’s appeal of the Board’s denial of his request to reopen claims for service connection for asthma, a knee condition, and a skin disorder of the foot, we vacate that decision and remand to the Veterans Court for further proceedings. Because the Veterans Court erred when it denied Maggitt’s motion to recall judgment, stay issuance of mandate and remand to the Board his request to reopen a claim of service connection for asthma, a knee condition, and a skin disorder, we vacate the decision and remand that claim to the Veterans Court, with instructions to remand the claim to the Board. Finally, Maggitt argues that the Board improperly applied a causation test when evaluating his claim of service connection for a back condition. Since we conclude that the Board did not apply a causation test, we reject Maggitt’s statutory challenge, as did the Veterans Court.
 

 I
 

 Adway Maggitt, Jr., served on active duty in the U.S. Army from September 1976 to September 1979 and from January to October 1980, when he was honorably discharged. In 1979 and 1983, Maggitt filed claims for service connection for asthma, a knee condition and a skin disorder of the foot (skin disorder), which regional offices of the Department of Veterans’ Affairs (Agency) denied. Maggitt did not appeal these decisions. In 1989, Maggitt sought to reopen' his claims for service connection for these three conditions and also requested service connection for a back condition. The regional office denied all four claims, and Maggitt filed a timely Notice of Disagreement (NOD) with the Board.
 
 See
 
 38 U.S.C. § 7105(a) (1994). The Board ruled that Maggitt had submitted new but not material evidence supporting the request to reopen the claim for benefit entitlement for the knee condition.
 
 See Maggitt v. West,
 
 No. 91-45801, slip op. at 12 (Nov. 13, 1996). The Board further found that Maggitt’s evidence submitted in support of the asthma and skin disorder claims was not “new.”
 
 Id.
 
 at 15, 17. The Board thus did not reach the question of whether this evidence was “material.”
 
 See Evans v. Brown,
 
 9 Vet.App. 273, 282 (1996) (question whether evidence is “material” is considered only if the evidence is “new”). The Board therefore denied Mag-gitt’s request to reopen the three claims. The Board also denied service connection for Maggitt’s back condition.
 
 Id.
 
 at 28. Maggitt appealed to the Veterans Court.
 

 Before the Veterans Court, Maggitt made two arguments that he had not previously presented to the Board. First, Maggitt argued the regional office’s failure to cite applicable case law in the decision through which the Agency denied his request for benefits, as is allegedly required by 38 U.S.C. § 7105(d)(1)(B) (1994), violated his right to due process protected by the U.S. Constitution, related statutes, and regulations. Second, Maggitt asserted that he was adversely affected by the Agency’s repeal in 1992 of two regulations governing administrative allowances, 38 C.F.R. §§ 19.5, 19.184 (1991), and that this repeal was invalid because there was no supplementary notice of repeal and the public was not invited to comment, as is allegedly required by the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706 (1994),
 
 see also
 
 5 U.S.C. § 552(a)(1) (1994) (publication requirements), § 553 (1994) (notice and comment requirements), or similar regulations adopted pursuant to chapter 72 of title 38 of the United States Code. Maggitt also filed a Motion for Summary Remand on March 18, 1998, request
 
 *1374
 
 ing an order remanding the case to the Board so that Maggitt could present the APA and constitutional arguments to the Board.
 

 Maggitt further argued that the Board erred in its factual conclusions with regard to his claim for service connection for a back condition, and that the Board applied “the incorrect .legal test” in evaluating the evidence.
 

 With respect to Maggitt’s APA argument, the Veterans Court summarily concluded that Maggitt had failed to exhaust his administrative remedies, by failing to present the issue to either the Regional Office or the Board. For that reason, the Veterans Court concluded that the APA issue was “not properly before the court.” As for Maggitt’s due process contention, the Veterans Court stated that that issue as well had not been presented earlier and consequently the Veterans Court had “no jurisdiction to review it either,”
 
 Maggitt v. West,
 
 No. 97-357, slip op. at 3, 1998 WL 665411 (Vet.Cl. Aug. 27, 1998), and it denied Maggitt’s Motion for Summary Remand because “the Court cannot remand an issue over which it has no jurisdiction.”
 
 Id.
 
 The Veterans Court did not reach the merits of the two issues, and we also express no views on those merits.
 

 The Veterans Court affirmed the Board’s denial of service connection for the back injury because Maggitt had not challenged the Board’s factual findings as clearly erroneous.
 
 Id.
 
 at 5. The court did not consider Maggitt’s argument that the Board had applied the incorrect legal test when evaluating his back claim.
 

 The Veterans Court issued judgment on September 18, 1998. On October 26, 1998, Maggitt filed a motion seeking a recall of the court’s judgment, stay of mandate, and remand to the Board for reconsideration in fight of this court’s decision in
 
 Hodge v. West,
 
 155 F.3d 1356 (Fed.Cir.1998), on September 16, 1998. In the motion, Mag-gitt argued that a remand was justified because
 
 Hodge
 
 revised the so-called
 
 Colvin
 
 standard for “new and material” evidence, under which the Board had evaluated his request to reopen the asthma, knee, and skin disorder claims.
 
 See Colvin v. Derwinski,
 
 1 Vet.App. 171 (1991). Maggitt asserted that remand was necessary so that the Board could reconsider the evidence under the new standard enunciated in
 
 Hodge.
 
 The Veterans Court denied the motion on October 30, 1998, because Mag-gitt “failed to show good cause or special circumstances that would justify the recall of the Court’s judgment”.
 
 See Maggitt v. West,
 
 No. 97-357, slip op. at 2 (Vet.Cl. Oct. 30, 1998) (order denying motion). This appeal followed.
 

 II
 

 Congress has limited our jurisdiction over a decision of the Veterans Court to those appeals that challenge the validity of any statute or regulation, any interpretations thereof, or that raise any constitutional controversies.
 
 See
 
 38 U.S.C. § 7292(a) (1994). An issue otherwise within our jurisdiction must, in addition, be one upon which the Veterans Court relied in making its decision.
 
 See
 
 38 U.S.C. § 7292(a) (1994);
 
 Linville v. West,
 
 165 F.3d 1382 (Fed.Cir.1999) (issue presented to Veterans Court is relied upon). Our jurisdiction also does not extend to appeals objecting either to factual determinations or to the law as applied to the facts of a particular case, unless there is a constitutional issue present.
 
 See
 
 38 U.S.C. § 7292(d)(2) (1994). Under section 7292(d)(1)(A), we hold unlawful and set aside any regulation or any interpretation thereof (other than a determination as to a factual matter) that we find to be “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 38 U.S.C. § 7292(d)(1)(A) (1994). The jurisdictional reach of the Veterans Court presents a question of law for our plenary review.
 
 See Wick v. Brown,
 
 40 F.3d 367, 370 (Fed.Cir.1994).
 

 A
 

 A synopsis of the process for obtaining disability benefits will provide context for
 
 *1375
 
 our discussion. A veteran’s application for benefits has five necessary elements: status as a veteran, the existence of disability, a connection between the veteran’s service and the disability, the degree of the disability, and the effective date of the disability.
 
 See Collaro v. West,
 
 136 F.3d 1304, 1308 (Fed.Cir.1998). Disagreement between the Agency and the veteran about one or more of these elements may create a dispute which is resolved by an Agency decision as to whether the veteran does or does not have legal entitlement to a particular benefit.
 
 See id.
 

 The veteran may appeal an adverse Agency decision to the Board. Appellate review is initiated by filing an NOD,
 
 see
 
 38 U.S.C. § 7105(d) (1994), which is a written communication from a claimant or the representative expressing dissatisfaction or disagreement with an adjudicative determination of the Agency.
 
 See
 
 38 C.F.R. §§ 19.118 (1989), 20.201 (1997);
 
 Collaro,
 
 136 F.3d at 1308 (disagreement between the Agency and the veteran over legal entitlement to a particular benefit may form the basis of a NOD). An NOD need not be expressed in any special wording, and the legal reasoning supporting the NOD need not appear in the NOD.
 
 See
 
 38 C.F.R. § 20.201 (1997);
 
 Ledford v. West,
 
 136 F.3d 776, 780 (Fed.Cir.1998). Once the Agency receives the veteran’s NOD, it must prepare a “statement of the case” setting forth the Agency’s decision, the law relied upon for the decision, and a summary of the reasons for such decision.
 
 See
 
 38 C.F.R. § 19.120 (1989); 38 U.S.C. § 7105(d)(1) (1994). The statement of the case frames the Agency’s view of the case, and is meant to assist the veteran in gaining every benefit that can be supported in law. The veteran is also required to file a “substantive appeal.”
 
 See
 
 38 U.S.C. § 7105(d)(3) (1994) (“Claimant should set out specific allegations of error in fact and law, such allegations related to specific items in the statement of the case”); 38 C.F.R. § 20.202 (1998). On appeal, the Board renders a decision on the merits of the veteran’s request for benefits entitlement, granting or denying a veteran’s request. The veteran may appeal the Board’s decision to the Veterans Court.
 

 Two requirements must be satisfied in order for the Veterans Court to possess jurisdiction over an appeal to it from the Board. First, the Veterans Court may review a Board decision only if the appeal was initiated by an NOD filed on or after November 18, 1988.
 
 See
 
 Veterans’ Judicial Review Act of 1988, Pub.L. No. 100-687, § 402, 102 Stat. 4105 (1988). An NOD is sufficient for jurisdiction over the entire request for benefits entitlement. Thus, a broad NOD, such as the one filed by Maggitt, may confer jurisdiction over the entire request for a benefits entitlement.
 
 See Collaro,
 
 136 F.3d at 1309 (concluding that broad NOD conferred jurisdiction over “radix” of issues within). Correspondingly, a narrow or specific NOD may limit the jurisdiction of the reviewing court to the specific elements of the disability request contested in the NOD.
 
 See Ledford,
 
 136 F.3d at 780 (concluding that NOD specifically identified and thus limited jurisdiction to issue of effective date of disability rating).
 

 B
 

 The second requirement is implicit in section 7252 of title 38, which provides in relevant part that the court has the “power to affirm, modify, or reverse
 
 a decision of the Board
 
 or to remand the matter as appropriate.” 38 U.S.C. § 7252(a) (1994) (emphasis added). The government is correct in the assertion that the jurisdiction of the Veterans Court by statute only reaches to a “decision of the Board.”
 
 Id.
 
 From that point, the government argues that the Veterans Court correctly decided that it lacked jurisdiction to consider Maggitt’s statutory and constitutional arguments because Maggitt failed to present these arguments to the Board. How, the government asks, can the Board issue a decision on an argument that it has not heard? The core of the government’s position is that the Board decides “arguments,” and that the jurisdiction of the Veterans Court
 
 *1376
 
 is limited to the arguments that are actually heard by the Board. The government asserts that its view of this matter was confirmed in
 
 Ledford.
 
 In a nutshell, the government reads
 
 Ledford
 
 to say that the Board must have rendered a decision on the specific legal arguments advanced by the veteran in order for the Veterans Court to possess jurisdiction to consider those arguments.
 

 The government misunderstands our ruling in
 
 Ledford.
 
 In that case, the veteran appealed from a 1990 Board decision that affirmed the effective date of the return of his schedular rating for disability benefits from 70 to 100 percent.
 
 See Ledford,
 
 136 F.3d at 777. Before the Veterans Court, Ledford also challenged on constitutional and statutory grounds a 1981 ratings decision by the Agency that terminated his individual unemployability benefits.
 
 [2]
 

 See id.
 
 at 779. Ledford had never requested the reinstatement of his individual unemployability benefits from the Board.
 
 See id.
 
 at 777. Accordingly, the Board never issued a decision granting or denying Ledford’s claim.
 
 See id.
 
 at 779. This court held that under 38 U.S.C. § 7252(a), the jurisdiction of the Veterans Court is “premised on and defined by the Board’s decision concerning the matter being appealed.”
 
 Id.
 
 “In short,” the
 
 Led-ford
 
 court concluded, “there was no Board decision for [Veterans Court] ... to review concerning the propriety of the termination [of unemployability benefits], and thus the court had no jurisdiction to consider that issue.”
 
 Id.
 

 Ledford
 
 actually holds that a veteran must first present a request for a benefit to the Board, then receive a decision on that request, in order to vest jurisdiction in the Veterans Court to consider the veteran’s request and arguments in support thereof. Ledford never requested the reinstatement of his individual unemployability benefits from the Board; accordingly, the Veterans Court did not have jurisdiction over Ledford’s claim, and thus lacked the authority to consider Ledford’s constitutional and statutory challenges to the 1981 Agency decision that terminated those benefits. To be sure, Ledford states that the Veterans Court did not err in declining to address Ledford’s constitutional and statutory arguments because they had not been raised before the Agency.
 
 Id.
 
 at 782. The court made that statement, however, in the context of the veteran’s failure to present a particular claim for benefits to the Board, not in the context of a failure to make particular arguments before the Board in support of the same benefit request that was ultimately presented to the Veterans Court. We do not interpret
 
 Ledford
 
 to limit the authority of the Veterans Court to hear
 
 legal arguments
 
 advanced in support of a particular benefit request when the Veterans Court
 
 does
 
 possess jurisdiction over the benefit request.
 

 A “'decision” of the Board, for purposes of the Veterans Court’s jurisdiction under section 7252, is the decision with respect to the benefit sought by the veteran: those benefits are either granted (in which case the Secretary of Veterans Affairs (Secretary) is bound by the decision and, under section 7252, may not appeal to the Veterans Court), or they are denied. The language of section 7252 itself supports this interpretation of “decision.” This is so, because it is the “decision” as to the benefit sought that estops the Secretary from appealing when the veteran succeeds at the Board, not some argument in support of the benefits decision that might offend the Secretary. In addition, section 7252 confers authority on the Veterans Court to “affirm, modify or reverse a decision of the Board.... ” 38 U.S.C. § 7252(a) (1994). This authority also speaks to the Board’s decision on the
 
 *1377
 
 veteran’s claim itself, not to an argument made or not made in support of the claim. We therefore conclude that the Veterans Court has jurisdiction to hear arguments presented to it in the first instance, provided it otherwise has jurisdiction over the veteran’s claim.
 

 C
 

 We now turn to the question of exhaustion of administrative remedies. The Veterans Court summarily held that it lacked the authority to hear Maggitt’s APA challenge because he had not presented the issue earlier in the veterans’ benefit claim process. Maggitt asserts before this court that the Veterans Court erred in its summary adjudication of whether exhaustion is required in the circumstances of this case, and that upon considerations unique to the veterans’ claims process, the exhaustion doctrine should not be invoked by the Veterans Court against him. The government responds that Maggitt has not overcome a “general requirement” favoring exhaustion, and thus the Veterans Court correctly invoked the doctrine against Maggitt.
 

 It is well settled that when Congress has not clearly mandated the exhaustion of particular administrative remedies, the exhaustion doctrine is not jurisdictional, but is a matter for the exercise of “sound judicial discretion.”
 
 McCarthy v. Madigan,
 
 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The exercise of that discretion, the Supreme Court has advised us, “requires fashioning of exhaustion principles in a manner consistent with congressional intent and any applicable statutory scheme.”
 
 Id.
 
 (citation omitted). Nothing in the statutory scheme providing benefits for veterans mandates a jurisdictional requirement of exhaustion of remedies which would require the Veterans Court to disregard every legal argument not previously made before the Board of Veterans’ Appeals. In fact, such an absolute rule would be inconsistent with the non-adversarial
 
 ex parte
 
 system that supplies veterans benefits. Thus, to the extent the Veterans Court decision in this case implies that the exhaustion doctrine is jurisdictional in nature, it is incorrect.
 

 While the Veterans Court may hear legal arguments raised for the first time with regard to a claim that is properly before the court, it is not compelled to do so in every instance. As the Supreme Court has held, whether to invoke the exhaustion of administrative remedies doctrine against a party — with the effect that the party’s arguments go unheard — is case-specific.
 
 See id.
 
 at 146, 112 S.Ct. 1081. The test is whether the interests of the individual weigh heavily against the institutional interests the doctrine exists to serve.
 
 See id.
 
 Those institutional interests are, in the main, to protect agency administrative authority and to promote judicial efficiency.
 
 See id.
 
 at 145, 112 S.Ct. 1081. In requiring exhaustion, an agency is given the opportunity to decide for itself in the first instance whether to accept the argument being advanced by the individual.
 
 See id.
 
 If an agency self-corrects and amends its ways to the satisfaction of the individual, judicial resources are conserved.
 
 See id.
 
 And even if the agency rejects the individual’s arguments, in some instances a better record is made for appellate review of the agency decision.
 
 See id.
 
 at 145-46, 112 S.Ct. 1081. This much is made clear in
 
 McCarthy.
 

 The Supreme Court, at the same time, noted that in three broad sets of circumstances it is inappropriate to invoke the doctrine against an individual. If exhaustion will result in prejudicial delay to the individual, or if there is “some doubt as to whether the agency was empowered to grant effective relief,”
 
 id.
 
 at 146-48, 112 S.Ct. 1081, the doctrine should not be invoked. Exhaustion is also inappropriate when an administrative remedy can be deemed inadequate because the administrative agency is “shown to be biased or has otherwise predetermined the issue before it.”
 
 Id.
 
 at 148-49, 112 S.Ct. 1081.
 

 In addition, and perhaps most importantly for the determination of whether
 
 *1378
 
 exhaustion should be invoked in a particular case, courts must appreciate the statutory system in which a party is seeking to avoid invocation of the exhaustion doctrine. If, for example, invocation of the doctrine would frustrate the purpose or purposes for which Congress has created a particular statutory arrangement, to the detriment of the individual, that point must be accounted for in reaching a decision whether to invoke the doctrine.
 
 See id.
 
 at 144, 112 S.Ct. 1081.
 

 Realistic considerations may reduce the ability of a veteran to mount legal challenges in the regional office or at the Board. Although veterans may obtain assistance within the system in fashioning their claims, independent counsel is unlikely to assist in that process until after the Board reaches its final decision.
 
 See
 
 38 U.S.C. § 5904(c)(1) (1994) (attorneys and agents may not charge any fee for services provided prior to the time the Board issues a final decision in a case). Although the veterans’ benefit system is intended to be “user friendly” to the veteran, these considerations suggest that the system may not be particularly “user friendly” for the presentation by a veteran of a legal challenge to the Secretary’s position, either in a regional office or before the Board.
 

 Whether the doctrine of exhaustion should be invoked thus entails a case-by-case analysis of the competing individual and institutional interests, including whether the Veterans Court should use its authority to “remand the matter, as appropriate,” to the Board. 38 U.S.C. § 7252(a) (1994).
 
 See Ledford v. West,
 
 136 F.3d 776, 781-82 (Fed.Cir.1998) (concluding that exhaustion was warranted, after reviewing specific facts of Ledford’s case). Although the decision whether to invoke the doctrine is a matter of discretion, upon balancing the interests at stake, the decision itself is reviewed independently at the appellate level.
 
 See id.
 
 (reviewing decision to invoke exhaustion rule as a matter of law). The Supreme Court used the same independent standard of review in
 
 McCarthy. See McCarthy,
 
 503 U.S. at 152-56, 112 S.Ct. 1081.
 
 See also McGee v. United States,
 
 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (same);
 
 Reiter v. Cooper,
 
 507 U.S. 258, 261, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) (same);
 
 McKart v. United States,
 
 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (same);
 
 Patsy v. Board of Regents of Fla.,
 
 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (same).
 

 Although it is open to question whether application of an exhaustion requirement is consistent with the statutory purposes underlying the veterans benefits laws, we are not prepared at this time to establish an across-the-board presumption for or against invocation of the exhaustion doctrine.
 
 See
 
 38 U.S.C. § 7105(d)(3) (1994) (providing that a veteran “should,” not “must,” set out specific allegations of error of fact or law in his substantive appeal to the Board). We think the Veterans Court is uniquely positioned to balance and decide the considerations regarding exhaustion in a particular case, and that, over time, it will develop a body of law in its unique setting that will permit comparable certainty in outcome that has occurred in other fields of law.
 

 Indeed, this case presents the opportunity for the Veterans Court to articulate the grounds upon which the exhaustion doctrine should, or should not, be invoked. The summary disposition of the issue by the Veterans Court in this case does not satisfy the requirement that the decision on the issue be case-specific in balancing the competing interests of the veteran and the government. We therefore vacate the decision that the exhaustion doctrine precludes decision by the Veterans Court of Maggitt’s APA argument.
 

 In sum, we hold that the Veterans Court did not lack jurisdiction to consider Maggitt’s constitutional and statutory arguments, and the request for remand. Maggitt presented a request to reopen his claims for service connection for his asthma, knee condition and skin disorder to
 
 *1379
 
 the Board. The Board denied this request, and Maggitt timely appealed the Board’s decision to the Veterans Court. Since the Veterans Court possessed jurisdiction over Maggitt’s request for benefits, the court did not lack the power to consider his constitutional and statutory arguments made in support of his benefit request. The Veterans Court also had full authority to consider Maggitt’s motion for remand of the claims. Accordingly, we vacate the decision of the Veterans Court, and remand the claims to reopen his case for further proceedings consistent with this opinion, including whether invocation of the exhaustion doctrine is appropriate in this case.
 

 Ill
 

 The second issue we must address is whether the Veterans Court erred when it denied Maggitt’s motion to recall judgment, stay issuance of mandate, and remand the case to the Board so that the Board could consider Maggitt’s request to reopen his claims to service connection for asthma, knee condition, and skin disorder in light of this court’s opinion in
 
 Hodge v. West,
 
 155 F.3d 1356 (Fed.Cir.1998), which issued two days before the Veterans Court’s judgment became final. In
 
 Hodge,
 
 this court revised the legal test' — the so-called
 
 Colvin
 
 test — adopted by the Veterans Court for reviewing determination as to whether proffered evidence is sufficiently “material” such that a veteran’s claim for service-connected disability benefits must be reopened.
 
 See id.
 
 at 1362 (the “reasonably likely to change the outcome” requirement of
 
 Colvin v. Derwinski,
 
 1 Vet.App. 171, 173 (1991), for whether evidence was “material” was inconsistent with 38 C.F.R. § 3.156(a) (1999), requiring that newly submitted evidence “be so significant that it must be considered in order to fairly decide the merits of the claim.”);
 
 see also Colvin,
 
 1 Vet.App. at 173. The Veterans Court held that Maggitt failed to show good cause or special circumstances that would justify the recall of the court’s judgment.
 
 See Maggitt v. West,
 
 No. 97-357, slip op. at 2 (Vet.Cl. Oct. 30, 1998) (order denying motion). The court noted that Maggitt did not claim that he submitted new and material evidence, nor did he challenge the factual findings of the Board as clearly erroneous before the Veterans Court.
 
 Id.
 
 For the reasons set forth below, we conclude that the Veterans Court erred with respect to Maggitt’s asthma, knee condition, and skin disorder claims.
 

 A
 

 As a preliminary matter, the government asserts that this court does not possess jurisdiction to review the Veterans Court’s decision. The government reminds us that Maggitt, in his appeal to the Veterans Court, did not challenge the Board’s decision that he had not presented new and material evidence to warrant reopening of his claims to service connection for his asthma, knee condition and skin disorder. For that reason, the government argues that Maggitt completely waived any right to adjudication of the new and material evidence issue, including any right to seek a remand in light of
 
 Hodge.
 
 In sum, the government argues that to review the denial of the remand motion would not implicate any statute or regulation relied upon by the Veterans Court. According to the government, we therefore lack jurisdiction to review the denial of Maggitt’s remand motion.
 

 Were we to accept the government’s argument, this court would be unable to judge whether the Veterans Court properly exercises its discretion when deciding whether to remand issues to the Board, even when the remand motion is prompted by an intervening change in law. The government’s argument overlooks the posture of the new and material evidence issue. We are not reviewing whether the Board’s decision on this issue is correct. We are simply asked to decide if the Veterans Court abused its discretion when it denied the remand motion. The Veterans Court derives its authority to remand matters to the Board from 38 U.S.C. § 7252(a) (1994), which expressly authorizes the
 
 *1380
 
 court to “remand the matter, as appropriate.” That statute concerns the jurisdiction of the Veterans Court and authority of the court to exercise it. We have previously held that issues of the Veterans Court’s jurisdiction invoke our appellate responsibility,
 
 see Ephraim v. Brown,
 
 82 F.3d 399, 400 (Fed.Cir.1996), and we may subject such issues to appropriate appellate review.
 

 B
 

 Turning to the substance of this matter, we are persuaded that the Veterans Court erred when it denied Maggitt’s motion to recall judgment and remand the request to reopen his claim to service connection for the knee condition for reconsideration under
 
 Hodge.
 
 The Board found that Maggitt’s evidence was “new,” but concluded that it was not “material,” under the
 
 Colvin
 
 test. In his brief to this court, Maggitt explained that he did not challenge the Board’s factual findings or assert that his evidence was material before the Veterans Court because the
 
 Colvin
 
 test presented an insurmountable barrier to a successful argument. We find this explanation compelling, especially in light of the statement in
 
 Hodge
 
 that the
 
 Colvin
 
 standard for determining whether newly submitted evidence was “material” may impose a higher burden on the veteran before a disallowed claim is reopened.
 
 See Hodge,
 
 155 F.3d at 1357. Moreover, we find it telling that the Veterans Court has
 
 sua sponte
 
 remanded a number of cases to the Board for reconsideration under
 
 Hodge
 
 and 38 C.F.R. § 3.153(a).
 
 See, e.g., Magnus v. West,
 
 No. 97-103, 1998 WL 732817 (Oct. 15, 1998) (deciding that remand is necessary for the Board to apply 38 C.F.R. § 3.156(a) and Hodge);
 
 Henson v. West,
 
 No. 96-0444, 1998 WL 778248 (Oct. 27, 1988) (same);
 
 Medearis v. West,
 
 No. 97-1704, 1998 WL 834832 (Oct. 28, 1998) (same). Given these considerations, and because the Veterans Court was aware of
 
 Hodge,
 
 which was decided only a few days before the judgment became final in Maggitt’s case, we hold that the Veterans Court abused its discretion when it declined to recall judgment, stay issuance of mandate, and remand Mag-gitt’s knee claim to the Board for reconsideration under
 
 Hodge.
 
 We vacate the decision of the Veterans Court and remand the claim for service connection for the knee condition to the Veterans Court, with instructions to remand to the Board for reconsideration under
 
 Hodge.
 

 The government also argues that it is unnecessary to remand the request to reopen the claims of service connection for asthma and skin disorder since the Board found that the evidence submitted in support of the claims was not “new.” Thus, the Board did not address the question of whether the evidence was material and relied on
 
 Colvin
 
 only to determine whether Maggitt presented “new” evidence.
 
 See Evans v. Brown,
 
 9 Vet.App. 273, 283 (1996) (question whether evidence is “material” is considered only if the evidence is “new”).
 

 We disagree that a remand is unnecessary for the asthma and skin disorder claims. In his brief to this court, Maggitt argued that he did not challenge the Board’s factual findings or assert that his evidence was “new” before the Veterans Court because
 
 Colvin
 
 presented a formidable barrier to a successful argument that the “new” evidence was “material.” We are persuaded by this explanation. Accordingly, we vacate the decision of the Veterans Court, and remand the claims for service connection for Maggitt’s asthma and skin disorder to the Veterans Court, .with instructions to remand to the Board for reconsideration.
 

 IV
 

 The final issue that we consider is whether the Veterans Court erred when it affirmed the Board’s denial of service connection for Maggitt’s back condition. Before the Veterans Court, Maggitt argued that the Board imposed a causation test when considering service connection of his back condition, because, in his view, the Board required proof that his current back injury was “caused” by an incident in service. The Veterans Court did not address
 
 *1381
 
 Maggitt’s argument. We assume that the Veterans Court “heard” the argument that the Board applied a causation test, and considered and rejected the argument.
 
 See Linville v. West,
 
 165 F.3d 1382, 1384-85 (Fed.Cir.1999) (argument presented to Veterans Court is relied upon).
 

 We agree with the Veterans Court that the Board did not apply a causation test when evaluating Maggitt’s back claim. We realize, of course, that we may not consider the Board’s factual determinations, nor may we consider the law applied to the facts of Maggitt’s case, for that would be outside of the scope of our jurisdiction. However, we may take notice of the legal test that the Board applied when it evaluated the evidence provided in support of Maggitt’s back claim. The Board addressed the requirement that the present disability be the same disability as that incurred in service. The Board did not consider the issue of whether Maggitt’s present back condition or his back condition in service were triggered or caused by an activity or event in service. Since Mag-gitt’s assertion that the Board relied on the “incorrect legal test” is a predicate for his statutory challenge, we have no occasion to consider Maggitt’s statutory argument. The Veterans Court correctly rejected Maggitt’s statutory argument as to his back condition, and we affirm its decision to affirm the Board’s denial of Mag-gitt’s request for benefits on account of his back condition.
 

 CONCLUSION
 

 The Veterans Court erred in dismissing Maggitt’s appeal of the Board’s denial of his request to reopen his claims for service connection for asthma, knee condition, and skin disorder, insofar as the dismissal depended on the Veterans Court’s view of its authority to hear Maggitt’s constitutional and APA arguments. Because the court had jurisdiction to consider those arguments in support of Maggitt’s claims, we vacate the decision and remand to the court for further proceedings consistent with this opinion. Because the Veterans Court erred when it denied Maggitt’s motion to recall judgment, stay issuance of mandate, and remand to the Board his request to reopen claims of service connection for asthma, a knee condition, and a skin disorder, we vacate that decision and remand the claim to the court, with instructions to remand the claim to the Board. Finally, the Veterans Court properly adjudicated Maggitt’s claim of service connection for a back condition.
 

 COSTS
 

 No costs.
 

 AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED.
 

 [1]
 

 . On March 1, 1999, the name of the United States Court of Veterans Appeals was changed to the United States Court of Appeals for Veterans Claims pursuant to the enact
 
 *1373
 
 ment of the Veterans Programs Enhancement Act of 1998, Pub.L. No. 105-368, § 511, 112 Stat. 3315, 2241 (1998). We refer throughout this opinion to the court by its new name although at the time of the proceedings and decisions here reviewed, it was not yet so named.
 

 [2]
 

 . During oral argument in the present case, the government did not dispute the characterization of the termination of Ledford's individual employability benefits in 1981 as a freestanding claim, separate from the claim regarding the effective date for the change in Ledford’s schedular rating.